**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| Lisa Almeida-Fortunato, | |
| Plaintiff, | |
| | Civil No. 16-9009(RMB) |
| v. | |
| Commissioner of Social Security, | **OPINION** |
| Defendant. | |

**BUMB**, United States District Judge:

THIS matter comes before the Court upon an appeal by Plaintiff Lisa Almeida-Fortunato (the "Plaintiff") of the final determination of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") and social security supplemental income ("SSI") for the period beginning June 26, 2012. For the reasons set forth below, the Court vacates the decision of the Administrative Law Judge ("ALJ") and remands for proceedings consistent with this Opinion.

## I. Disability Defined

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not
less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act
further states that:

> [A]n individual shall be determined to be under a
> disability only if his physical or mental impairment
> or impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential
analysis for evaluating a claimant's disability, as outlined in
20 C.F.R. § 404.1520(a)(4)(i)–(v). In Plummer v. Apfel, 186 F.3d
422, 428 (3d Cir. 1999), the Third Circuit described the
Commissioner's inquiry at each step of this analysis, as
follows:

> In step one, the Commissioner must determine whether
> the claimant is currently engaging in substantial
> gainful activity. 20 C.F.R. § 404.1520(a). If a
> claimant is found to be engaged in substantial
> activity, the disability claim will be denied. Bowen
> v. Yuckert, 482 U.S. 137, 140 (1987).

> In step two, the Commissioner must determine whether
> the claimant is suffering from a severe impairment. 20
> C.F.R. § 404.1520(c). If the claimant fails to show
> that his impairments are "severe," he is ineligible
> for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to his past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

## II.  Background

The recitation of the Plaintiff's medical history contained in the ALJ's 22 page opinion is near exhaustive. This Court, however, recites the facts that are necessary to its determination on appeal, which is limited to the weight afforded to the opinion of Dr. Mintzer, a state-agency psychiatrist, in

the ALJ's calculation of Plaintiff's Residual Functional
Capacity ("RFC"), and whether the ALJ considered all of
Plaintiff's medically determinable impairments.

   A. Brief Medical History

   Plaintiff was born on July 25, 1967 and was 44 years old on
the alleged date of disability onset, June 26, 2012.
(Administrative Record "R." 86). Until that date, Plaintiff was
employed as a "Human Services Assistant" at Ancora Psychiatric
Hospital. (R. 441). Plaintiff testified -- and the medical
evidence reflects to various extents -- that she suffers from a
number of physical and mental impairments.

   Plaintiff's primary concern appears to be a sensitivity to
certain chemicals, which she testified has caused open sores (or
burns) to develop throughout her body. (Id. at 53-55, 63-64,
66). In early 2015, Dr. Karen Calabrese, D.O., indicated that
Plaintiff may suffer from Multiple Chemical Sensitivity
Syndrome. (Id. at 690, 786). Plaintiff testified that she is not
entirely clear on which chemicals cause this reaction, and that
her condition fluctuates from day to day, at times being
exacerbated by the weather. (Id. at 59, 61, 62, 64, 67). These
chemical burns, Plaintiff testified, were the driving force
behind her "falling apart" at work and ultimately losing her
job. (Id. 54).

Plaintiff has also complained of, among other things: joint pain and stiffness, (Id. at 60-61, 74, 299-301, 304, 326, 327); chronic headaches (Id. at 651, 666, 668, 678, 683, 750, 753, 764, 825); problems hearing and breathing, (Id. at 50, 302, 322, 323, 326); lyme disease, (Id. at 17); MRSA, (Id.); anxiety, depression, and panic attacks, (Id.); GERD, (Id.); mitral valve prolapse, (Id.); attention deficit disorder ("ADD"), (Id.); COPD, (Id.); and malnutrition, (Id.). The ALJ's assignment of severity to these various ailments is discussed below.

1. State Agency Consultant Assessments

Plaintiff underwent two consultative examinations with state-agency psychiatrist Dr. Lawrence Mintzer. The first of these examinations took place on May 13, 2014, and the second on December 14, 2015. (Id. 566-69, 884-87).

At the first consultation, Dr. Mintzer performed a mental status examination and noted that Plaintiff

> was oriented to person, place, and time. She was casually dressed and adequately groomed. . . . [she]seemed depressed; for instance, she became tearful near the end of my interview with her. [Plaintiff]'s affect was somewhat constricted. [She] has never experienced either auditory or visual hallucinations.
>
> [Plaintiff]'s thought processes were goal-directed and her speech was coherent. There were no indications of any delusional thinking. There was no evidence of any suicidal ideation. [Plaintiff] has never made a suicide attempt. There were no indications of any homicidal thinking. [Plaintiff] does not experience

any ideas of reference. She said that she has a fear
of bad weather.

[Plaintiff]'s abstract thinking is fairly good. Her
fund of general knowledge is good. Her capacity to
perform simple calculations is good. Her concentration
was fairly good; for instance, she performed serial
sevens somewhat slowly, making no errors while doing
them. She was able to correctly spell the word "world"
both forward and backwards. [Plaintff]'s intelligence
is estimated to be in the average range.

[Plaintiff]'s remote memory is good. Her recent memory
is fair, for instance, she was able to recall one out
of three items after one minute and again after five
minutes. She was able to recall what she had eaten for
dinner on the evening prior to my meeting with her.
[Plaintiff]'s immediate retention and recall are
somewhat poor; for instance, she was able to repeat
three digits forwards and four digits in reverse.
[Her] impulse control is good; for instance, she does
not have any problems controlling her temper.
[Plaintiff]'s social judgment is fair. Her insight is
good. She seems to be a reliable informant.

(Id. 567-69).

Dr. Mintzer diagnosed Plaintiff with panic disorder,

unspecified anxiety disorder, and unspecified depressive

disorder. (Id. at 569). Dr. Mintzer's opinion was that

"[o]verall, [Plaintiff]'s limitations are moderate to severe in

degree."

Dr. Mintzer performed another mental status examination at

the second consultation, which yielded largely the same results

and at which he again concluded that Plaintiff's limitations

were "moderate to severe in degree." After this examination,

however, Dr. Mintzer completed a "Medical Source Statement of

Ability to do Work Related Activites (Mental)" in which he
indicated that Plaintiff would be, among other mild to moderate
limitations, markedly limited in her ability to carry out simple
instructions, carry out complex instructions, and respond
appropriately to usual work situations and to changes in a
routine work setting. (<u>Id.</u> at 888-89).

    2. <u>History of Chronic Headaches</u>

As noted above, the medical evidence reflects that Plaintiff
was treated for chronic headaches at multiple points after her
alleged disability onset date. (<u>See id.</u> at 651, 666, 678, 683,
750, 764, 825). These records reflect the findings of Dr. Karen
Calabrese, Dr. Anca Popescu, Nurse Practitioner Jennifer Hartle,
and Dr. Cindy Hou. (<u>Id.</u>) Further, Plaintiff testified regarding
her headaches in her hearing. (<u>See id.</u> at 57).

    B. <u>Procedural Background</u>

Plaintiff applied for DIB and SSI on January 13, 2014
alleging that she was disabled due to, among other things, MRSA,
mitral valve prolapse, anxiety, allergies, trouble breathing,
migraines, and joint swelling. (R. 86-87). Plaintiff's claims
were denied on June 4, 2014, (<u>Id.</u> at 140-45), and
reconsideration was denied on August 15, 2014. (<u>Id.</u> at 151-56).

On August 27, 2014, Plaintiff requested a hearing, (<u>Id.</u> at
157-61), and on November 17, 2015 a hearing was held before the
Honorable Marguerite Tolan. (<u>Id.</u> at 42-85). Plaintiff (who was

unrepresented by counsel), Plaintiff's mother, and vocational
expert Marian Marracco testified at the hearing. (Id. at 42-85).
On August 30, 2016, the ALJ issued a decision finding that
Plaintiff was not disabled. (Id. at 11-41). The Appeals Council
denied Plaintiff's request for review on October 28, 2016, (Id.
at 1-3), at which time the ALJ's decision became the final
determination of the Commissioner.

C. The ALJ's Decision

The ALJ applied the requisite five-step analysis in her
Opinion, ultimately concluding that Plaintiff was not
"disabled." The ALJ deferred on the issue of "substantial
gainful employment" at Step 1, declining to determine whether
Plaintiff had been gainfully employed since June 26, 2012. (Id.
at 16). At Step 2, The ALJ found that Plaintiff had six severe
impairments: lyme disease, causing chronic joint pain; COPD;
depression; panic attacks; attention deficit disorder ("ADD");
and malnutrition.[1] (Id. at 17). Next, at the Third Step, the ALJ
determined that the Plaintiff did not have an impairment or
combination of impairments that met or medically equaled the

---

[1] The ALJ also addressed mitral valve prolapse and GERD, but found
that these impairments were non-severe because "there [was]
minimal clinical evidence in the record to corroborate or
support any finding of significant vocational impact related to
these conditions" and "[d]iagnostics [sic] studies and clinical
evidence of record fail to establish that these conditions cause
more than minimal functional limitations." (R. 17).

severity of one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, App. 1. (Id. at 17-19)

Based on her findings, the ALJ determined that Plaintiff

had the RFC to perform

> light work as defined in 20 CFR 404 .1567(b) and
> 416.967(b) except . . . [that the Plaintiff] can
> walk/stand up to 6 hours per day total, but no more
> than one hour at a time and then would need to
> sit/shift positions for about 5 minutes every hour
> while remaining on task. She cannot climb ropes,
> ladders or scaffolds. She can occasionally climb ropes
> and stairs. She must avoid exposure to dust, fumes,
> gases, humidity and temperature extremes. She would be
> limited to low stress work (defined as routine work
> having no fast production rate pace and no strict
> production quotas). The low stress work would also
> involve simple, routine tasks consistent with
> unskilled work. This individual csn have no face-to-
> face interaction with the public due to allergies.
> This individual would likely be absent one day per
> month due to symptoms.

(Id. at 19-32). In making these findings, the ALJ considered,

among other things, the Plaintiff's testimony, the testimony of

Plaintiff's mother, the Adult Function Report completed by

Plaintiff, and Plaintiff's voluminous medical record including

the treatment notes and reports of the multiple doctors who

evaluated Plaintiff.[2] (Id.)

---

[2] With regard to Plaintiff's physical pain and symptoms, the
ALJ's decision references the notes from: Plaintiff's visits to
AdvoCare Sicklerville Internal Medicine; Dr. Howard Bresalier;
Nurse Practitioner Jennifer Hartle; Dr. Alexander Hoffman; Dr.
Vijay Singh; Dr. Karen Calabrese; Garden State Infectious
Disease Associates; Dr. Noah Lindenburg; a consultative
examination by Dr. Robert Joynes; and multiple emergency room
visits. (A.R. 19-32). With regard to Plaintiff's mental

The ALJ found that the allegations made by Plaintiff and
Plaintiff's mother regarding the "nature and severity of . . .
[Plaintiff's] limitations . . . [were] not well-supported by the
clinical and diagnostic evidence." (Id. at 21). The ALJ also
afforded less than full weight to Dr. Mintzer's opinions of
Plaintiff's mental limitations. First, the ALJ afforded little
weight to Dr. Mintzer's opinion, formed after his first
consultation with Plaintiff, that Plaintiff's limitations were
moderate to severe in degree, finding that it was "too broad and
. . . [did] not specify the limitations." (Id. at 28). Second,
the ALJ afforded "some weight . . . but not great weight" to Dr.
Mintzer's opinion formed after the second consultation, finding
that it "was not based on a detailed, longitudinal relationship
with the claimant, and is basically a snap-shot opinion of the
claimant's functioning at that particular time."[3] (Id. at 29).

After performing the RFC assessment, the ALJ determined
that Plaintiff was unable to perform any past relevant work.
(Id. at 32). Furthermore, the ALJ concluded that Plaintiff was a
"younger individual" as of the alleged disability onset date,
had at least a high school education and was able to communicate
in English. (Id. at 33). She further determined that

_____

impairments, the ALJ referenced the notes and opinions of Dr.
Mintzer. (Id. at 27-29).
[3] Plaintiff challenges the ALJ's assignment of weight on this
issue.

transferability of job skills was immaterial to her determination under the medical-vocational rules. (Id.)

Then, considering Plaintiff's age (44 years old as of the alleged disability onset date (Id.)), education, work experience, and RFC as determined, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Id. at 33-34). Further, because Plaintiff had exertional and non-exertional limitations that restricted her RFC beyond the full range of light work, the ALJ based this determination upon the testimony of Vocational Expert Marracco. (Id. at 34). Ms. Marracco testified that a hypothetical individual with Plaintiff's limitations could work as a document preparer (DOT 249.587-018), addresser (DOT 209.587-010), or an order clerk (food and beverage)(DOT 209.567-014). (Id.) Thus, Plaintiff's application was denied. (Id.)

## III. Standard of Review

When reviewing an ALJ's final decision on disability benefits, courts are required to uphold the ALJ's factual determinations if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "'Substantial evidence' has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Dellapolla v. Comm'r, 662 Fed. Appx. 158, 160 (3d

Cir. 2016) (quoting <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d

Cir. 1981) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401

(1971))).

If faced with conflicting evidence, however, the

Commissioner "must adequately explain in the record his reason

for rejecting or discrediting competent evidence." <u>Ogden v.</u>

<u>Bowen</u>, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing <u>Brewster v.</u>

<u>Heckler</u>, 786 F.2d 581 (3d Cir. 1986); <u>see</u> <u>also</u> <u>Guerrero v.</u>

<u>Comm'r</u>, No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19,

2006) ("The ALJ's responsibility is to analyze all the evidence

and to provide adequate explanations when disregarding portions

of it."), <u>aff'd</u>, 249 F. Appx. 289 (3d Cir. 2007). As stated by

the Third Circuit,

> [U]nless the [Commissioner] has analyzed all evidence
> and has sufficiently explained the weight he has given
> to obviously probative exhibits, to say that his
> decision is supported by evidence approaches an
> abdication of the court's duty to scrutinize the
> record as a whole to determine whether the conclusions
> reached are rational.

<u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978) (quoting

<u>Arnold v. Sec'y of Health, Ed. & Welfare</u>, 567 F.2d 258, 259 (4th

Cir. 1977)) (internal quotations omitted).

While the Commissioner's decision need not discuss "every

tidbit of evidence included in the record," <u>Hur v. Barnhart</u>, 94

F. App'x 130, 133 (3d Cir. 2004), it must consider all pertinent

medical and non-medical evidence and "explain [any]

conciliations and rejections," Burnett v. Comm'r, 220 F.3d 112, 122 (3d Cir. 2000). See also Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the [administrative law judge] to make reference to every relevant treatment note in a case where the claimant ... has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

In addition to the "substantial evidence" inquiry, the Court must also determine whether the ALJ applied the correct legal standards. See Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Id. at 262 (citing Schaudeck v. Comm'r, 181 F.3d 429, 431 (3d Cir. 1999).

## IV. Analysis

Plaintiff presents several issues for review by this Court. First, Plaintiff argues that the ALJ failed to properly weigh the medical evidence of record. Specifically, Plaintiff contends that the ALJ failed to properly weigh the opinions of Dr. Mintzer and Dr. Robert Joynes, failed to consider medical opinions provided by Dr. Nicholas Palladino, Plaintiff's treating physician, and failed to "discharge her heightened duty to develop the record with special care required where the Plaintiff was unrepresented at the hearing." (Pl.'s Br. 7-13).

Second, Plaintiff argues that the ALJ failed to provide a proper assessment of Plaintiff's RFC taking into account all of Plaintiff's medically determinable impairments. Specifically, Plaintiff argues that the ALJ failed to properly consider Plaintiff's history of fibromyalgia or chronic headaches in assessing Plaintiff's RFC, and that the limitation of Plaintiff's face-to-face interactions only to those with the public is not supported by the medical evidence. (Id. at 17-20). Finally, Plaintiff argues that she should be entitled to summary judgment on the above arguments. (Id. at 20-21).

Because the Court finds that the ALJ failed to fully explain the weight given to the opinion of Dr. Mintzer and failed to consider all of the medical evidence of record, specifically Plaintiff's history of chronic headaches, even though the record was thoroughly developed, the Court cannot determine whether the Commissioner's finding is supported by substantial evidence. As such, the Court will remand for further proceedings. See Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided."). Because remand is warranted on these issues, the Court need not reach Plaintiff's additional arguments.

In order to clarify the ALJ's responsibilities on remand, however, the Court will briefly address Plaintiff's contention that the ALJ fell short of her "heightened duty" to develop the record.

A. Failure to Explain the Weight Attributed to Dr. Mintzer's Second Opinion

As noted above, the ALJ evaluated and weighed the opinions of several medical professionals in determining the severity of Plainiff's physical limitations. With regard to Plaintiff's mental limitations, however, Dr. Mintzer was the only medical professional who provided an opinion. Plaintiff argues that the ALJ failed to adequately explain her assignment of "some weight" to Dr. Mintzer's second opinion. The Court agrees.

Ultimately, it is the "the ALJ – not treating or examining physicians or State agency consultants" who "make[s] the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). In making that decision, the ALJ is entitled to critically evaluate the evidence, including the opinions of physicians, but must "sufficiently explain" the weight given to "obviously probative exhibits." Terwilliger v. Chater, 945 F. Supp. 836, 842 (E.D. Pa. 1996) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)). An ALJ may not, however, "reject a physician's findings unless [s]he first

weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." Terwilliger, 945 F. Supp. at 842 (quoting Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (internal quotation marks, citations and indication of alteration omitted).

With regard to Dr. Mintzer's December 14, 2015 opinion that plaintiff had "marked limitations" in her ability to respond to usual work situations and to changes in a routine work setting, the ALJ noted that "[t]he undersigned gives some weight to Dr. Mintzer's opinion, but not great weight as his opinion was mot based on a detailed, longitudinal relationship with the claimaint, and is basically a snap-shot opinion of the claimant's functioning at that particular time." (R. 29). The ALJ does not explain, however, which portions of Dr. Mintzer's opinion she credited, nor does she point to other medical evidence related to Plaintiff's mental limitations that runs counter to Dr. Mintzer's opinion.

The ALJ's shortcoming in providing sufficient detail on this point effects this Court's ability to carry out its "duty . . . to determine whether the conclusions [the ALJ] reached are rational." Terwilliger, 945 F. Supp. at 843 (quoting Cotter, 642 F.2d at 705). Specifically, a determination that Plaintiff had marked limitations in her ability to carry out such basic work

functions could affect the reasonableness of the Plaintiff's RFC
(which provided for basic, unskilled work) and the decision at
Step 5 that Plaintiff could perform the jobs cited by the
vocational expert. Such additional limitations could potentially
lead to a finding of disability.

It is entirely possible that the ALJ properly discredited
the relevant portions of Dr. Mintzer's opinion, and that this
will be a non-issue on remand. Because she did not make that
decision clear in her opinion, however, this Court cannot decide
whether the ALJ's decision on this issue was based on
substantial evidence.

B. Failure to Consider Plaintiff's History of Chronic
   Headaches

Plaintiff further argues that the ALJ erred in failing to
address Plaintiff's chronic headaches. Plaintiff contends that
this constituted error both at Step 2 of the sequential
evaluation process and in formulating Plaintiff's RFC.

In order to determine, at Step 2, that an impairment is not
"severe," the ALJ must provide "a careful evaluation of the
medical findings that describes the impairment(s) (i.e., the
objective medical evidence and any impairment-related symptoms),
and an informed judgment about the limitations and restrictions
the impairment(s) and related symptom(s) impose on the
individual's physical and mental ability to do basic work

activities." SSR 96-3p. "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." Cotter, 642 F.2d at 706-07 (internal citation omitted).

As noted above, the medical evidence contains multiple references to Plaintiff's chronic headaches. The ALJ did not address Plaintiff's chronic headaches at Step 2. While the ALJ did reference Plaintiff's headaches when summarizing the medical evidence, (see, e.g., R. 23-24), she did not evaluate their severity, nor was it clear whether she had considered them in her formulation of Plaintiff's RFC. The ALJ is required to assess all of Plaintiff's impairments (both "severe" and not) when formulating the RFC. See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."); see also SSR 96-8 (requiring adjudicator to consider "limitations and restrictions imposed by all of an individual's impairments, even those that are not severe"). Because the ALJ did not do so here, the finding both

at Step 2 and on Plaintiff's RFC are incomplete and this Court cannot determine whether they are supported by substantial evidence. Therefore, they must be vacated and remanded for further proceedings.

On remand, the ALJ must evaluate all of the evidence involving Plaintiff's physical impairments, including headaches, and explain why, alone or in combination, these impairments do or do not satisfy the step two severity standards. Furthermore, even if Plaintiff's headaches are not "severe," they should be explicitly considered in the RFC formulation.

C. ALJ's "Heightened Duty" to Develop the Record for Unrepresented Claimaint

Finally, Plaintiff argues that the ALJ fell short of her "heightened duty" to "develop the record and hold a full and fair hearing" where a claimaint appears pro se at an administrative hearing. (Pl.'s Br. 12-13); see Sancez v. Comm'r of Soc. Sec., 271 F. App'x 230, 233 (3d Cir. 2008). Specifically, Plaintiff argues that the ALJ erred in failing to obtain certain medical records from Dr. Howard Bresalier, an Ear, Nose, and throat specialist who treated Plaintiff. The Court disagrees.

The ALJ did more than enough to ensure that Plaintiff received a full and fair hearing. She had a full colloquy with Plaintiff regarding Plaintiff's right to representation, even

going so far as to offer to postpone the hearing until Plaintiff could find counsel. (R. 44-47). Further, the ALJ considered evidence Plaintiff brought with her to the hearing, and sought to further build the record by ordering additional consultative examinations. (R. 46-47, 80-82). Moreover, the ALJ allowed Plaintiff's mother to testify at the hearing. (R. 72-75).

The ALJ's failure to track down unspecified records relating to treatments with Dr. Bresalier, whose other treatment notes are in the record and were considered by the ALJ, does not constitute reversible error. To the contrary, the ALJ took care to create a thorough and voluminous record in this case. Aside from two mistakes (discussed in detail above) it is hard to imagine what more this ALJ could have been expected to do. Remand is not warranted on this ground.

## V.   Conclusion

Because the Court cannot determine why and to what extent Dr. Mintzer's opinion was discredited, and because it is not clear that the ALJ considered Plaintiff's history of chronic headaches in Step 2 or in determining Plaintiff's RFC, the decision of the Commissioner will be vacated and the Court will remand for further proceedings. On remand, the ALJ may still determine that Plaintiff is not disabled. In fact, she may still discredit the opinion of Dr. Mintzer. If so, however, she must explain which portions of said opinion are being credited, and

point to the record evidence that counsels for little weight to be afforded to the remainder of the opinion. Further, the ALJ may determine that Plaintiff's headaches are not severe and that they have no effect on Plaintiff's RFC. Those decisions, however, must be expressed in the ALJ's Opinion.

An Order and Final Judgment consistent with this Opinion shall issue on this date.

 s/ Renee Marie Bumb
RENÉE MARIE BUMB
United States District Judge

DATED: December 29, 2017